

February 2, 2016

**VIA E-FILING**
The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

>   RE:   *ELM 3DS Innovations, LLC v. Samsung Electronics Co., Ltd., et al.,*
>   **(C.A. No. 14-cv-1430-LPS-CJB)**
>   *ELM 3DS Innovations, LLC v. Micron Technology, Inc., et al.,*
>   **(C.A. No. 14-cv-1431-LPS-CJB)**
>   *ELM 3DS Innovations, LLC v. SK Hynix Inc., et al.,*
>   **(C.A. No. 14-cv-1432-LPS-CJB)**

Dear Chief Judge Stark:

   Elm 3DS Innovations, LLC ("Elm") and the above-named Defendants have reached an impasse on the draft protective order's provision regarding access for in-house counsel, and attorneys acting as in-house counsel, to an opposing party's confidential and highly-confidential information ("CDI"). During the December 4th telephone conference, the Court found that Ron Epstein, of Epicenter Law, is analogous to in-house counsel. (Tr. at 23:17–21, Dec. 4, 2015). Thus, the Court concluded that "the protective order . . . is going to need to treat him as if he is effectively in-house counsel for the plaintiff, and he should have all the same rights that in-house counsel for defendants have, no greater and no lesser." (Tr. at 24:2–6). The parties now dispute the rights that should be afforded to in-house counsel. Elm respectfully requests that the Court adopt Elm's proposal regarding in-house counsel (attached as Ex. A).

   Defendants' goal has consistently been to block Mr. Epstein from accessing Defendants' CDI. Defendants have evidently decided that the only way to keep Mr. Epstein in the dark is to reverse their original position –that in-house counsel should have access to CDI – and to propose instead that in-house counsel should be categorically barred from accessing CDI. There are two problems with Defendants' proposal. First, it is a self-serving attempt to violate the spirit of the Court's ruling while appearing to follow the letter of it. Second, Defendants are attempting to justify their proposal by claiming that it treats each party the same. It does not. While the language does not on its face discriminate between sides, the effect of the language does. It prevents Elm from being able to understand and evaluate the relative strengths of its case, and it handicaps Elm's ability to negotiate with Defendants on equal footing.

   At the outset of negotiations on the proposed protective order, Defendants agreed that in-house counsel should have access to CDI, but proposed that the provision should be limited to in-house counsel "employed" by a party. Thereafter, Elm proposed that counsel retained to act as in-house counsel should also have access to CDI. In other words, Mr. Epstein would have the same access to CDI as Defendants' in-house counsel. Defendants rejected Elm's proposal. At that point, Elm recognized that the parties had reached an impasse, and after meeting and

conferring with Defendants, requested scheduling a teleconference with the Court. (Oct. 27, 2015 e-mail Walling to Defendants, attached as Ex. B). In a last-ditch attempt to avoid involving the Court, Defendants proposed striking the in-house counsel provision altogether, which would have effectively barred Mr. Epstein as well as their own in-house counsel from accessing CDI. (Oct. 27, 2015 e-mail Chen to Walling, attached as Ex. C). Elm refused this proposal, stating "Elm cannot agree to [the] proposed revisions because they do not provide a means by which Elm's settlement counsel can receive/discuss Protected Information." Elm also noted "it would appear we remain at an impasse on this issue, and should proceed to a discovery conference with the Court" (Oct. 28, 2015 e-mail Walling to Chen, attached as Ex. D).

During the December 4th teleconference, the Court definitively decided that Mr. Epstein must be treated the same as Defendants' in-house counsel. Since that holding, Defendants have continued to demand that the provisions to which they originally agreed – allowing in-house counsel to have access to CDI – be stricken from the draft protective order.[1] Striking those provisions still, however, frustrates what Elm's goal has been all along: securing access for Mr. Epstein so he may perform his role as in-house counsel and settlement counsel for Elm. Elm cannot accept that this was the intended result of the Court's ruling.

Defendants' proposal places form over substance. Defendants contend that their proposal is equitable because, as Micron's counsel explained, "[w]e're going to live by the same rule that we want Elm to live by." (Tr. at 19:21–22). The dispute here is not about gaining equitable treatment for in-house counsel, such that any proposal would be acceptable. The dispute centers on Defendants' goal of keeping Mr. Epstein in the dark. Initially, Defendants argued that Mr. Epstein is not in-house counsel, and should therefore not have access. That did not work. Now, Defendants are arguing that even if Mr. Epstein is effectively in-house counsel, no in-house counsel should have access. That should not work either.

Defendants are plainly attempting to make an end run around the Court's ruling that Mr. Epstein "should have all the same rights that in-house counsel for defendants have, no greater and no lesser." (Tr. 24:4–6). Striking the in-house counsel provision may treat the parties the "same" on its face, but in practice it places Elm at a disadvantage. Defendants' proposal is a blatant attempt to take advantage of the disparity between the parties with respect to the amount of CDI each possesses. Defendants have an enormous amount of CDI, and a major portion of Elm's infringement case will involve analysis of that CDI. Elm, on the other hand, has very little CDI, a fact that Defendants explicitly admitted during the December 4th telephone conference: "[Elm has] no products and no trade secret technical information." (Tr. at 11:3-4). Defendants' proposal is therefore inequitable because it still provides unequal access to information concerning infringement – the central issue in this case. Under their proposal, Defendants' in-house counsel will have the upper hand when it comes to making informed decisions on the strengths and weaknesses of the case. They will have direct access to most of Elm's information

---

[1] Any suggestion that during the December 4th teleconference Elm accepted Defendant's proposal to strike the in-house counsel provision is nonsensical and a mischaracterization of the record. It does not make sense that Elm would fight so hard to explain to the Court why Mr. Epstein needs access, only to abandon that position to accept a proposal that does not provide Mr. Epstein access.

2

based purely on the non-confidential nature of Elm's documents. Meanwhile, under Defendants' proposal, Mr. Epstein will be entirely barred from learning anything about Defendants' infringement-related information because Defendants have designated it as CDI.

Without a doubt, before making any decisions, the executives at SK hynix, Micron, and Samsung who will ultimately approve any settlement of this case will look to their trusted in-house counsel for a fact-based evaluation of the strengths and weaknesses of their case. Elm should have that ability as well. Further, any direct negotiations between Mr. Epstein and Defendants' in-house counsel will be hamstrung if Mr. Epstein is unable to access Defendants' CDI to confirm or dispute any factual assertions Defendants make during those negotiations.

Elm's proposal creates a level playing field by giving Mr. Epstein and Defendants' in-house counsel the same ability to access important, infringement-related information. Furthermore, as presented during the December 4th telephone conference, Elm's proposal achieves this balance, while still respecting Defendants' articulated concerns, by keeping its request narrow. Elm merely requests the ability to **orally discuss** Defendants' CDI with Epicenter – specifically with Ron Epstein. Under Elm's proposal, Mr. Epstein would not be able to see any documents, and Elm has further agreed that Mr. Epstein would not be able to take notes on the content of the discussions. Elm is not proposing any such restrictions on Defendants' access to Elm's CDI.

As officers of the Court, Elm's litigation counsel are attempting to facilitate meaningful settlement conversations between the parties. Mr. Epstein is essential to these ongoing conversations because of his longstanding relationship with the inventor, Mr. Leedy, and the resultant level of trust that Mr. Leedy has in Mr. Epstein. Also, Mr. Epstein represents to this Court that he has deep experience in evaluating and settling patent cases. He also represents that in his twenty five year career in patent licensing, including six years as Director of Patent Licensing at Intel, only one case he had responsibility for ever went to trial (none at Intel) because of his ability to evaluate cases and communicate risks and opportunities with opposing in-house counsel. His successful track record for settling cases shows that he will be a major asset in resolving this case. As discussed in the December 4th telephone conference, Mr. Epstein has already been extensively involved in settlement conversations with each Defendant. In order to continue having those discussions in a meaningful way, Mr. Epstein needs access to information relating to infringement. Defendants should not be able to frustrate that fact in pursuit of a strategy that is clearly intended to deny Elm the advice and independent judgment of its in-house counsel at any cost. This case will be better off if in-house counsel for both parties are adequately informed and engaged on one of the central issues in this case.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-File)