
McCARTER & ENGLISH
ATTORNEYS AT LAW

February 4, 2016

**VIA E-FILING**

The Honorable Leonard P. Stark
J. Caleb Boggs Federal Building
844 N. King Street
Unit 28, Room 2325
Wilmington, DE 19801-3555

Daniel M. Silver
Partner
T. 302-984-6331
F. 302-691-1260
dsilver@mccarter.com

Re:  *Elm 3DS Innovations LLC v. Samsung Electronics Co., Ltd. et al*, C.A. No. 14-1430-LPS-CJB; *Elm 3DS Innovations LLC v. Micron Technology Inc. et al*, C.A. No. 1:14-cv-01431-LPS-CJB; and *Elm 3DS Innovations LLC v. SK hynix Inc. et al*, C.A. No. 14-cv-1432-LPS-CJB

Dear Chief Judge Stark:

    I write on behalf of all Defendants in the above-referenced actions in response to the letter filed by Plaintiff Elm 3DS Innovations ("Elm") on February 2, 2016 (D.I. 101).[1] The sole issue that remained after the December 4, 2015 hearing is whether Mr. Ron Epstein, who is a "competitive decisionmaker" on behalf of Elm and serial litigant, should be permitted access to Defendants' confidential information ("CDI"). Although Elm argued that Defendants were seeking to have their in-house counsel treated differently, Elm's assertion is plainly incorrect—the written record demonstrates that for all three Defendants, the current proposed protective order prohibits access by in-house counsel to the other parties' CDI. Thus, all parties are on equal footing.

McCarter & English, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801-3717
T. 302.984.6300
F. 302.984.6399
www.mccarter.com

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

    Mr. Epstein and Epicenter IP group are engaged in competitive decision-making, namely the licensing and brokerage of patent assets, rather than in the practice of law. *See* D.I. 84 (Elm Letter) ("Mr. Epstein focuses on patent licensing, brokerage, and strategic IP consulting" and "assisted Elm's president, Glenn Leedy, in selling a large patent portfolio."); D.I. 85, Ex. 1 (Epicenter website) ("Epicenter team members contribute their unique combination of legal, business, and technical expertise to execute successful patent transactions for our clients; be they brokerage, licensing, or project based in nature."); *Id.* Ex. 2 (Mr. Epstein's biography) (stating that Mr. Epstein has delivered "over $1 billion of value from the sale or licensing of patents in over 150 transactions."). Mr. Epstein is also currently adverse to Defendant Micron in another case.[2] Although ELM argues that Mr. Epstein does not "purchase" patent portfolios, it cannot deny that his business is to license and broker such portfolios, primarily on behalf of non-practicing entities that

---

[1] D.I. references are from C.A. No. 1:14-cv-01432-LPS-CJB.

[2] *See MLC Intellectual Property, LLC v. Micron*, Civil Action No. 3:14-CV-03657 (N.D. Cal.) *and* D.I. 85, ex. 3.

ME1 21948026v.1

The Honorable Leonard P. Stark
February 4, 2016
Page 2

assert such portfolios against the electronics industry.

Thus, consistent with this Court's past practice, Mr. Epstein and his company should be prohibited from accessing Defendants' CDI. *See Apeldyn Corp. v. AU Optronics Corp.*, 2012 WL 2368796, at *7-10 (D. Del. June 13, 2012) (quoting *R.R. Donnelley & Sons Co. v. Quark, Inc.*, 2007 WL 61885, at *2 (D. Del. Jan.4, 2007)), *R&R adopted*, 2012 WL 2366537 (D. Del. June 20, 2012) (denying corporate representatives involved in licensing access to highly confidential information); *Affymetrix, Inc. v. Illumina, Inc.*, 2005 WL 1801683, at *1-2 (D. Del. July 28, 2005) (prohibiting a lawyer involved in settling patent litigation and patent licensing from having access to a party's highly confidential information as it was a competitive decision-maker); *Research Frontiers Inc. v. E Ink Corp. et al.*, Oral Order (D. Del., Nov. 16, 2015), No. 13-cv-01231, D.I. 141 (denying request to disclose defendant's confidential information to expert who competed and will compete with defendant) (enclosed as Exhibit A).

Although Elm argues that Mr. Epstein is trustworthy, Mr. Epstein and his firm could use the information gleaned from this case, however inadvertently, to make competitive decisions regarding which patent portfolios to pursue or not to pursue against parties in the future. Mr. Epstein and Epicenter, unlike trial counsel, advise clients on competitive decision-making issues pertaining to the acquisition and assertion of patents. Mr. Epstein and Epicenter therefore run a much higher risk of inadvertently using protected information in their counseling on which patents to acquire and assert. The risk of inadvertent disclosure justifies the prohibition against Mr. Epstein and his company. *See F.T.C. v. Exxon Corp.*, 636 F.2d 1336, 1350 (D.C. Cir. 1980) ("[I]t is very difficult for the human mind to compartmentalize and selectively suppress information once learned, no matter how well-intentioned the effort may be to do so."); *see also Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20, 22 (D. Del. 1998).

Elm's assertion that it would be at a disadvantage under Defendants' proposed version of the protective order is incorrect. Defendants' protective order precludes **all** in-house counsel from access to CDI and is thus fairly balanced. *See* Ex. B (Defendants' proposed provision regarding access to CDI). Just as Mr. Epstein cannot learn secret details of Defendants' products, Defendants' in-house counsel cannot learn of Elm's CDI, such as the terms of Elm's previous license and settlement agreements. Elm's argument that there is an imbalance of CDI is solely due to the fact that Defendants, as practicing entities who actually sell products to consumers, generate and have significantly more highly confidential information that could cause them competitive harm if disclosed. Besides, all outside counsel have access to an equal amount of CDI, thus limiting Elm's alleged "disadvantage."

Elm's contention that Mr. Epstein may help in settlement hardly justifies disclosing some of Defendants' most valuable secret information. Like all in-house counsel, Mr. Epstein should rely on the judgment of its outside counsel. Here, Elm's

The Honorable Leonard P. Stark
February 4, 2016
Page 3

outside counsel can adequately advise Elm of the strength and weaknesses of its case without conveying the details of Defendants' CDI.  Defendants have advised Elm that they will consider, on a case-by-case basis, sharing certain confidential information with Mr. Epstein in the context of a settlement negotiation, thus facilitating settlement.  Moreover, there is no indication or argument that Elm's outside counsel is incapable of settling this case.  Indeed, they have significant experience resolving litigation.  The security of Defendants' CDI cannot be compromised simply because Elm prefers to have Mr. Epstein, rather than its outside counsel, lead settlement discussions.  Thus, the parade of horribles that Elm complains of can be alleviated in the context of settlement discussions between willing parties.

      Finally, Elm erroneously asserts that Defendants are "plainly attempting to make an end run around the Court's [previous] ruling."  D.I. 101 at 2.  Quite to the contrary, Defendants' position has consistently been that Mr. Epstein should not have access to CDI. D.I. 85 at 2; 12/4/2015 Tr. at 19:15-20.  Elm concedes as much.  D.I. 101 at 2 ("Defendants proposed [on October 27, 2015] striking the in-house counsel provision altogether, which would have effectively barred Mr. Epstein as well as their own in-house counsel from accessing CDI.").  *See also* Ex. C (9/29/2015 Email from Micron).  In fact, the SK hynix and Samsung defendants have always proposed the prohibition on Mr. Epstein.  *See* Ex. D (10/12/2015 Email). Elm also recognized that this dispute always related "to whether Elm may share confidential information with Epicenter and in particular Mr. Ron Epstein" as effectively being the same as prohibited in-house counsel from SK hynix and Samsung 12/4/2015 Tr. 13:24-14:2.  Regardless, at the time this issue was previously presented to the Court, it was Defendants' position, uniformly, that in-house counsel should not have access to CDI.  Insofar as there was any ambiguity on this point, it was Elm that submitted an incorrect version of Defendants' proposal and that made unclear what versions of the protective order were being proposed by each side.  12/4/2015 Tr. 19:10-22 and 23:22-24:1.  Although Elm was aware of Defendants' position prior to the previous discovery hearing on this issue, Elm has sought a second bite at the argument.

      Accordingly, Defendants respectfully submit that because Mr. Epstein and Epicenter IP Group may be considered "competitive decisionmakers," they should be treated the same as Defendants' in-house counsel and not be allowed access to Defendants' CDI.

Respectfully submitted,

/s/ Daniel M. Silver

Daniel M. Silver (#4758)

cc:   All counsel of record (via CM/ECF)

ME1 21948026v.1